1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN PARZIALE,

          Plaintiff,

    v.

HP, INC,

          Defendant.

Case No.  5:19-cv-05363-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**

Re: Dkt. No. 25

      This putative nation-wide class action suit arises out of Defendant HP Inc.'s ("HP" or "Defendant") implementation of a remote firmware update that allegedly incapacitated Plaintiff John Parziale's ("Plaintiff") HP printers and thirty-three other models of HP printers by preventing the use of certain non-HP ink cartridges in those printers.

      On November 13, 2019, Plaintiff filed the First Amended Class Action Complaint (Dkt. No. 19, "FAC").  HP now moves to dismiss the FAC pursuant to Rules 8(a)(2), 9(b), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure (Dkt. No. 25, "Motion").  The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons below, Defendant's motion is **GRANTED in part and DENIED in part**.

## I.   Background

      On or around September 12, 2017, Plaintiff purchased an HP Officejet Pro 7740 printer from an Office Depot in Jacksonville, Florida.  FAC ¶ 22.  On June 6, 2018, Plaintiff purchased another HP Officejet Pro 7740 printer from Amazon.com.  *Id.* at ¶ 23.  When shopping for a printer, it was important to Plaintiff that the printer be compatible with third-party ink cartridges

and refilled HP ink cartridges because these non-HP cartridges were less expensive than their HP brand counterparts. *Id.* at ¶¶ 25-27. Indeed, Plaintiff repeatedly alleges that he would not have purchased the printers had he known that he would be unable to use non-HP cartridges with the printer. *See, e.g., id.* at ¶¶ 27, 33, 58, 100. Plaintiff did not see any representations by HP that he would only be able to use HP brand cartridges, so Plaintiff bought the HP printers. *Id.* at ¶¶ 25-27. The packaging on the printers Plaintiff bought included the statement: "Please use genuine HP ink cartridges for best results." *Id.* at ¶ 34.

Though Plaintiff did not know it at the time of purchase, certain HP printers are configured to perform automatic updates to the software embedded in the device—known as firmware— without user intervention. *Id.* at ¶ 35. This means that HP can remotely update the firmware in its printers without users' knowledge. *Ibid.* HP's online support page for the Officejet Pro 7740 (the "Support Page") contains a brief description of this remote update ability, which HP calls "dynamic security."[1] *Id.* at ¶ 37. The Support Page states:

> Reminder: Dynamic security enabled printer. This Firmware
> includes dynamic security measures, which may prevent supplies
> with non-HP chips or circuitry from working now or in the future.

---

[1] HP's motion to dismiss attaches a printout of the Support Page as an exhibit. Samplin Decl., Dkt. No. 26-1, Ex. A. While the Court generally does not consider materials outside of the complaint on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007). A document may properly be incorporated by reference where a party "refers extensively to the document." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019) (citation omitted). Because the allegations in the FAC quote from and rely on the Support Page, the Court finds that the Support Page was incorporated by reference, and finds it appropriate to consider Exhibit A.

1    *Ibid.*  The Support Page further states: "HP cannot guarantee the quality or reliability of non-HP

2    cartridges."  *Id.* at ¶ 38.

3         On or around April 12, 2019, HP used dynamic security technology to implement a

4    firmware update that modified the firmware on many models of HP printers, including Plaintiff's

5    printers, without alerting users.[2]  *Id.* at ¶ 31.  The update caused affected printers to cease

6    functioning with certain third-party and refilled cartridges.  *Id.* at ¶ 32.  HP printers and

7    compatible ink cartridges contain chips that allow the printer and the cartridge to communicate

8    with each other.  *Id.* at ¶ 74, p. 16.[3]  The printer chip contains a master key code and the cartridge

9    chip contains a base key code that allows the printer to authenticate that the cartridge is

10   compatible.  *Ibid.*  The April firmware update changed the communication protocol between

11   printer chips and cartridge chips so that certain varieties of non-HP cartridge chips were no longer

12   able to communicate with the HP printers.  *Id.* at ¶ 82, p. 18.  Because the firmware update

13   blocked these non-HP cartridge chips, any cartridge with such a chip no longer functioned with an

14   HP printer.  *Ibid.*

15        As a result of the update, Plaintiff's printer ceased working with the refilled cartridges that

16   were installed in his printers at the time.  *Id.* at ¶ 40.  When Plaintiff attempted to print, he

17   received a series of error messages stating that he needed to replace empty cartridges and that

18   there was a "cartridge problem."  *Id.* at ¶¶ 42-44.  He replaced the refilled cartridges with other

19   third-party cartridges and received another error message directing him to remove and reinstall the

---

[2] Plaintiff alleges that the firmware update affected all HP Officejet Pro 7740 model printers as well as an extensive list of other printer models (the "Class Printers").  *See* FAC ¶ 67 for a complete list of Class Printers.

[3] The FAC's paragraphs are incorrectly numbered beginning after paragraph 90 on page 19.  There are also two paragraphs numbered 59, and two paragraphs numbered 67.  The Court refers to the paragraph number listed in the FAC with a page number where necessary for clarity.

United States District Court
Northern District of California

1   cartridge to make sure it was correctly installed.  *Id.* at ¶ 45.  Plaintiff was not able to use his

2   printers unless and until he bought HP brand cartridges.  *Id.* at ¶ 32.  At the time of the firmware

3   update, Plaintiff had purchased and was in possession of at least nine refilled cartridges, which no

4   longer functioned with his printer following the update.  *Id.* at ¶ 33.  As of the date the FAC was

5   filed, Plaintiff's printers still did not work unless they were loaded with original HP cartridges.  *Id.*

6   at ¶ 83, p. 18.  Plaintiff alleges that this limited functionality devalued his printers.  *Id.* at ¶ 32.

7       Plaintiff alleges that HP has engaged in this type of conduct before.  *Id.* at ¶ 84, p. 18.  For

8   example, firmware updates in March 2016 and September 2017 similarly altered the

9   communication protocol between HP printers and certain non-HP cartridges.  *Ibid.*  One prior

10  remote firmware update gave rise to a class action lawsuit filed in this Court involving very

11  similar claims against HP.  *See San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075 (N.D. Cal. 2018).  In

12  *San Miguel*, this Court granted in part and denied in part HP's motion to dismiss the plaintiffs'

13  claims.  *Id.*  Following the Court's order on the motion to dismiss, the parties reached a settlement

14  by which HP agreed not to reinstall or reactivate Dynamic Security in the printers at issue in that

15  case.  FAC ¶ 70, p. 20.  While the parties agree that HP has not violated the settlement agreement,

16  Plaintiff alleges that HP has continued to engage in a pattern of pushing firmware updates in other

17  printer models, including the Class Printers in this case.  *Id.* at ¶¶ 71-72, p. 20.

18      Based on the foregoing, Plaintiff seeks to represent "[a]ll United States Citizens who,

19  between the applicable statute of limitations and the present, purchased or owned one [or] more

20  Class Printers" (the "Class") as well as "all persons in Florida who purchased or owned one or

21  more Class Printers" (the "Florida Subclass").  *Id.* at ¶ 75, p. 21.

22      On behalf of the Florida Subclass, Plaintiff asserts claims for violation of the Florida

23  Deceptive and Unfair Trade Practices Act ("FDUTPA") (Claim 1) and the Florida Misleading

24  Advertisement Law ("FMAL") (Claim 2).  On behalf of the Class, Plaintiff asserts claims for

25  violations of the Computer Fraud and Abuse Act ("CFAA") (Claim 3), trespass to chattels (Claim

26  4), and tortious interference with contractual relations and/or prospective economic advantage

27  Case No.: 5:19-cv-05363-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    DISMISS AND/OR STRIKE

United States District Court
Northern District of California

1   (Claim 5).

2       HP now moves to dismiss all of Plaintiff's claims, asserting that HP is not under any legal

3   duty to make its printers compatible with non-HP ink cartridges.  Motion, p. 1.  HP reasons that all

4   of Plaintiff's claims start from the underlying and deficient premise that HP had some duty to

5   make its printers compatible with non-HP ink cartridges, even those containing cloned security

6   chips that infringe on HP's intellectual property.  *Ibid.*  HP argues that it was under no such legal

7   obligation, did not make any misleading representations as to the compatibility of non-HP

8   cartridges with its printers, and generally did nothing unlawful.  *Ibid*

9       In his Opposition to HP's Motion (Dkt. No. 29, "Opposition"), Plaintiff represented that he

10  would voluntarily withdraw his claim for tortious interference with contractual relations.  Opp., p.

11  3.  Therefore, the Court does not address HP's arguments for dismissal of Claim 5.

**II.   Legal Standard**

13      Federal Rule of Civil Procedure 12(b)(6) provides that a party may seek dismissal of a suit

14  for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The

15  complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

16  plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

17  *Twombly*, 550 U.S. 544, 570 (2007)).  When deciding whether to grant a motion to dismiss, the

18  court "must accept as true all factual allegations in the complaint and draw all reasonable

19  inferences in favor of the nonmoving party."  *Retail Prop. Trust v. United Bhd. of Carpenters &*

20  *Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted).  However, "courts are not

21  bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

22  Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient

23  facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

24  2001).

**III.   Discussion**

26          **a.   FDUTPA Claim**

27  Case No.: 5:19-cv-05363-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    DISMISS AND/OR STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff alleges that HP violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. §§ 501.201 et seq.  FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006), *review denied,* 962 So.2d 335 (Fla. 2007).  "Whether an alleged act or practice is deceptive or unfair may be decided as a matter of law."  *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015), report and recommendation adopted, No. 3:14-cv-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015); *see, e.g., P.C. Cellular, Inc. v. Sprint Solutions, Inc.,* No. 5:14-cv-237-RS-GRJ, 2015 WL 128070, at *5 (N.D. Fla. Jan. 8, 2015); *Zambrano v. Indian Creek Holding, LLC,* No. 09-cv-20453, 2009 WL 2365842, at *1 (S.D. Fla. July 30, 2009).

### i.  Rule 9(b)

Consumer-protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *San Miguel*, 317 F. Supp. 3d at 1084.  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Federal district courts are split as to whether FDUTPA claims are subject to the heightened pleading requirements of Rule 9(b).  *Compare Costa v. Kerzner Int'l Resorts, Inc.*, No. 11-cv-

United States District Court
Northern District of California

1 | 60663, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) (finding Rule 9(b) does not apply) *with*

2 | *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011)

3 | (finding that Rule 9(b) does apply).  "[W]here the gravamen of the [FDUTPA] claim sounds in

4 | fraud" the heightened pleading standard of Rule 9(b) applies.  *State Farm Mut. Auto. Ins. Co. v.*

5 | *Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327-28 (S.D. Fla.

6 | 2017) (applying Rule 9(b) requirements to an FDUTPA claim where the "gravamen" of the

7 | complaint was that Defendants engaged in a "fraudulent scheme" to "grossly inflate[ ]" the value

8 | of their patients' personal injury claims so that plaintiff-insurer would "pay significant settlement

9 | amounts based upon false information.").

10 | Courts have recognized, however, that "FDUTPA was enacted to provide remedies for

11 | conduct outside the reach of traditional common law torts like fraud, and thus plaintiffs need not

12 | prove the elements of fraud to sustain an action under FDUTPA."  *See, e.g.*, *State of Fla., Office of*

13 | *Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D.

14 | Fla. 2005) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act

15 | because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party

16 | asserting a deceptive trade practice claim need not show actual reliance on the representation or

17 | omission at issue.") (citation omitted); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA

18 | 2000) ("The plaintiff need not prove the elements of fraud to sustain an action under the statute.").

19 | HP argues that Plaintiff's FDUTPA claim sounds in fraud because Plaintiff characterizes

20 | HP's alleged omissions with respect to the firmware update as "unfair and/or fraudulent" and

21 | constituting a "common scheme" undertaken to "mislead" and "deceive."  *See* FAC ¶¶ 56, 87, 90.

22 | At its core, Plaintiff's FDUTPA claim is grounded in HP's allegedly misleading failure to disclose

23 | certain information to consumers in the course of business.  The Court finds that despite the

24 | FAC's few references to fraudulent conduct, the "gravamen" of Plaintiff's FDUTPA claim does

25 | not sound in fraud.  *See Harris v. Nordyne, LLC*, No. 14-cv-21884, 2014 WL 12516076, at *5

26 | (S.D. Fla. Nov. 14, 2014) ("even where a FDUTPA claim includes allegations which implicate

27 | Case No.: 5:19-cv-05363-EJD

28 | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE

1   fraudulent conduct, it need not meet the heightened pleading requirements of Rule 9(b)").

2   Therefore, Rule 9(b) pleading requirements do not apply to Plaintiff's FDUTPA claim.  *See Id.* at

3   *4 (holding that Rule 9(b) did not apply where FDUTPA claim was "grounded in an alleged

4   deceptive omission by failure to disclose," reasoning that the heightened pleading requirement is

5   not necessary to [p]rovide defendant adequate notice of an alleged omission).

### ii.  Deceptive Act

7       For purposes of a FDUTPA claim, deception occurs where there is a "representation,

8   omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances,

9   to the consumer's detriment."  *Westgate Resorts, Ltd. v. Sussman*, 387 F. Supp. 3d 1318, 1363

10  (M.D. Fla. 2019) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

11  This deception may be accomplished by innuendo and through omissions, rather than outright

12  false statements.  *State Farm Mutual Automobile Insurance Company v. Performance*

13  *Orthopaedics & Neurosurgery*, LLC, 278 F.Supp.3d at 1327.  To satisfy this element, "the

14  plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in

15  the same circumstances."  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016)

16  (internal quotations and citations omitted).

17      Plaintiff argues that HP failed to disclose its "ability to lock out third-party cartridges or

18  refilled cartridges with its firmware updates," (FAC ¶ 39) and that this omission constitutes a

19  deceptive act under FDUTPA.  *Id.* at ¶ 92.  Plaintiff concedes that his claims are "not premised on

20  affirmative misrepresentations, except insofar as Defendant made misleading statements which

21  gave rise to a duty to disclose its deceptive conduct."  Opp. p. 21, n. 8.  Plaintiff alleges that three

22  statements in particular gave rise to HP's duty to disclose its ability to prevent the use of non-HP

23  cartridges: (1) a statement on the packaging of the printers Plaintiff purchased, which directed

24  customers to "[p]lease use genuine HP ink cartridges for best results" (FAC ¶ 34); (2) an

25  unspecific representation that "made Plaintiff believe that he could use 952-, 952XL, 953-, and

26  953XL ink cartridges, including third party ink cartridges" (*Id.* at ¶ 26); and (3) a statement on the

United States District Court
Northern District of California

United States District Court
Northern District of California

Support Page that "HP cannot guarantee the quality or reliability of non-HP cartridges" (FAC ¶ 38).[4]  Plaintiff argues that these statements, when viewed together, misleadingly imply that consumers would be able to use non-HP cartridges with their HP printers in perpetuity, and that HP therefore had a duty to disclose the fact that a remote firmware update could render non-HP cartridges incompatible.

The Court agrees that the statement that HP ink produces "best results" implies that it is possible to use non-HP ink cartridges with the printer.  The Court does not agree, however, that this implication is misleading to a reasonable customer.  At the time Plaintiff purchased the printers, it *was* possible to use non-HP cartridges.  *Id.* at ¶ 29.  The statement on the box does not, on its face, imply that the printer is compatible with *all* non-HP cartridges, or that it would *always* be compatible with such cartridges.  The statement, therefore, does not create a duty for HP to disabuse consumers of any such misconception.

The Support Page stated that "HP cannot guarantee the quality or reliability of non-HP cartridges." *Id.* at ¶ 38.  Like the statement on the box, this statement implies that non-HP cartridges may be compatible with the printer; however, it does not make any representation that all non-HP cartridges will work or that those cartridges will continue to work in the future.  In fact, it expressly warns that non-HP cartridges may not be reliable.  In light of this express warning, no reasonable customer would understand HP's statement to mean that the printer would

---

[4] While Plaintiff's allegations regarding HP's omissions focus on the information available at the "point of sale" (FAC ¶¶ 34, 92, 106), he relies on HP's statements on the Support Page to show that HP misled consumers into believing that non-HP cartridges were compatible.  *Id.* at ¶¶ 37-40; Opp. p. 6, 23.  Because Plaintiff alleges that the Support Page misled him regarding his ability to use non-HP cartridges, he must also acknowledge that information on the Support Page was available to him prior to purchase.  Thus, the Court considers the information on the Support Page to be information available to Plaintiff prior to and at the time of purchase.

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE

1    remain compatible with non-HP cartridges.

2         HP's alleged statements regarding "generic ink cartridge number[s]" are similarly not

3    misleading.  *See* Opp., p. 23.  Plaintiff alleges that that "all of the printers previously purchase by

4    Plaintiff allowed the use of third party ink cartridges," that "it was common industry practice" to

5    allow the use of such cartridges.  FAC ¶ 26.  He then alleges that "[t]hese representations and

6    omissions made Plaintiff believe that he could use 952-, 952XL, 953-, and 953XL- ink cartridges,

7    including third party ink cartridges and refilled HP ink cartridges."  *Ibid.*  Plaintiff fails to identify

8    what those "representations and omissions" were that caused him to believe that he could use

9    particular generic cartridges.  In the absence of any allegedly misleading representation, HP was

10   under no duty to correct Plaintiff's misconception based on his knowledge of "industry practice"

11   and his prior purchases.  *See San Miguel*, 317 F. Supp. 3d at 1089 (finding no misrepresentation

12   where HP included specific parts numbers on the printer box in the absence of any statement that

13   would lead a reasonable consumer to believe the numbers were for generic parts).

14        Because none of the allegedly misleading statements gave rise to a duty to disclose

15   additional information, the Court finds that Plaintiff's allegations as to HP's omissions are

16   insufficient to state a claim under FDUTPA.  *In re NJOY, Inc. Consumer Class Action Litig.*, No.

17   14-cv-00428-MMM, 2015 WL 12732461, at *14 (C.D. Cal. May 27, 2015) ("Where an FDUTPA

18   claim is based on an omission, and the defendant had no duty to disclose the purportedly withheld

19   information, the claim fails as a matter of law.") (citing *Virgilio v. Ryland Group, Inc.*, 680 F.3d

20   1329, 1338 (11th Cir. 2012)).

21        Moreover, the information that Plaintiff argues HP should have disclosed was in large part

22   disclosed on the Support Page.  Plaintiff alleges that HP misled him by not telling him "at the time

23   of purchase that [his] HP Printer would at some time in the future reject the less expensive third

24   party replacement ink cartridges."  FAC ¶ 10.  However, the Support Page expressly stated that the

25   printer's firmware "includes dynamic security measures, which may prevent supplies with non-HP

26   chips or circuitry from working now or in the future."  *Id.* at ¶ 37.  While HP did not disclose a

27

28   Case No.: 5:19-cv-05363-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS AND/OR STRIKE

United States District Court
Northern District of California

plan to distribute the firmware update at issue (and there are no allegations that HP had such a plan at the time of Plaintiff's purchases), the warning on the Support Page is sufficient to counter any potential misconception about the use of non-HP cartridges. *Casey*, 2015 WL 10096084, at *13 ("FDUTPA does not require companies to be wholly transparent . . . so long as the publication is not probably deceptive and likely to cause injury to a reasonably relying consumer."). It defies common sense to suggest that a reasonable customer would understand HP's assertion that non-HP cartridges may be prevented from working in the future to mean that non-HP cartridges would continue to work in perpetuity. *See Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1374 (S.D. Fla. 2007) (rejecting FDUTPA claim where "the literature makes clear those very things that Plaintiffs complain were deceiving.").

The Court, therefore, finds that Plaintiff has failed to allege any representation or omission likely to deceive a reasonable customer sufficient to state a claim under FDUTPA.

### iii.  Unfair Practice

Plaintiff next argues that HP's conduct violates FDUTPA because it constitutes an unfair business practice. Fla. Stat. § 501.204. An act or practice is "unfair" for the purposes of FDUTPA if it causes consumer injury that is (1) substantial, (2) not outweighed by any countervailing benefits to consumers or competition, and (3) one that consumers themselves could not have reasonably avoided (the "Section 5 Test"). *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014) (adopting the FTC Policy Statement on Unfairness for the purposes of establishing unfairness under FDUTPA).[5] "[V]iolations of FDUTPA include

---

[5] Although courts applying FDUTPA have often defined an "unfair" act or practice as one that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *see, e.g., PNR, Inc.,* 842 So.2d at 777, that definition appears to be outdated, *Porsche,* 140 So.3d at 1096; *Casey*, 2015 WL 10096084, at *6. Regardless, the difference in definition is immaterial to the Court's analysis here.

United States District Court
Northern District of California

1    violations of '[t]he standards of unfairness and deception set forth and interpreted by the Federal

2    Trade Commission or the federal courts.'" *Id.* at 1096–97 (quoting Fla. Stat. § 501.203(3)(b)); *see*

3    *Fed. Trade Comm'n v. Vylah Tec, LLC*, No. 17-cv-228-PAM-MRM, 2019 WL 722085, at *6

4    (M.D. Fla. Jan. 9, 2019) (stating the requirements for a FDUTPA claim "mirror[] the requirements

5    of Section 5 of the FTC Act"); *Casey*, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015)

6    (same).

7            Plaintiff alleges that HP engaged in the following unfair practices in violation of FDUTPA:

8    •   Defendant "misled Purchasers by intentionally omitting highly relevant

9        material information from purchasers at the point of sale regarding future

10       restrictions that HP would place on the use of Class Printers, namely a firmware

11       update that would render incompatible any third party or refill ink cartridges

12       with Class Printers" (FAC ¶ 92);

13   •   Defendant "invaded Class Members' Class Printers without notice or

14       authorization, and substantially decreased the value of the products, after the

15       point of sale, by installing permanent firmware updates onto the units that

16       rendered the units less functional and less valuable than they were prior to that

17       time" (*Id.* at ¶ 93);

18   •   Defendant "invaded Class Members' Class Printers without notice or

19       authorization, and rendered existing third party and refill ink cartridges that

20       Class Members had previously purchased and owned valueless to class

21       members" (*Id.* at ¶ 94);

22   •   Defendant "sold printers which were not advertised to disclose particular

23       features and functions and forced modifications without consumers' consent"

24       (*Id.* at ¶ 95);

25   •   Defendant "harm[ed] . . . competition and raise[d] the cost of owning printers

26       amongst consumers generally in the marketplace by artificially restricting free

27

Case No.: 5:19-cv-05363-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS AND/OR STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    choice with respect to aftermarket products.  This is accomplished by forcing

2    existing customers who have sunk a high upfront cost in a printer (a barrier to

3    entry for a consumer who wishes to purchase a competitor printer but is now

4    stuck), and now are restricted to continuing to use that printer and HP brand ink

5    cartridges at an artificially elevated variable cost due to barriers preventing

6    them from altering their otherwise free choice. By tying a fixed base product

7    (printers) to variable products (ink cartridges) in this way, when combined with

8    undisclosed deceptive conduct of altering the base product without

9    authorization, HP has harmed competition and consumers both generally, and

10   specifically" (*Id.* at ¶ 96).

11   Plaintiff alleges that this conduct caused him to suffer injury including by rendering his printers

12   unusable (*Id.* at ¶¶ 32, 33, 52, 57, 86, 93, 94, 100, 129, 134), by rendering his replacement

13   cartridges useless (*Id.* ¶ 33), by forcing him to buy more expensive HP brand replacement ink

14   cartridges (*Id.* at ¶¶ 32, 50), and by devaluing his printers (*Id.* at ¶¶ 32, 33, 52, 57, 86, 93, 94, 96,

15   100, 129, 134).  Accepting these allegations as true, the Court finds that Plaintiff has sufficiently

16   alleged a "substantial injury" under the first prong of the Section 5 Test.  *Porsche*, 140 So. 3d at

17   1101 ("In most cases a substantial injury involves monetary harm, as when sellers coerce

18   consumers into purchasing unwanted goods") (excerpting the FTC Policy Statement on Unfairness

19   date Dec. 17, 2980).

20        With respect to the second prong of the Section 5 Test, HP argues that Plaintiff fails to

21   raise any allegation that his injury is not outweighed by a countervailing benefit to consumers.

22   Reply, p. 7.  Plaintiff maintains that there is no countervailing benefit on the face of the FAC that

23   justifies HP's conduct.  Opp. p. 18.  As HP points out, however, the Support Page, which is

24   incorporated into the FAC, contains a number of reasons for the firmware updates that are

25   allegedly beneficial to consumers and to competition.  *See* Support Page, Dkt. No. 26-1 (the

26   "process for authenticating cartridges" is to "protect the quality of [the] customer experience,

27

28

United States District Court
Northern District of California

1    maintain the integrity of [HP's] printing systems, and protect [HP's] intellectual property.").

2    Plaintiff raises no allegations to refute these alleged benefits, or to show that they are outweighed

3    by the injury he suffered.  Even accepting the allegations as true and construing them in the light

4    most favorable to Plaintiff, the Court finds that Plaintiff fails to allege that his injury outweighs

5    any countervailing benefit to consumers.  *See Kindred Studio Illustration & Design, LLC v. Elec.*

6    *Commc'n Tech.*, LLC, 2018 WL 6985317, at *7 (C.D. Cal. Dec. 3, 2018) (dismissing FTC Section

7    5 claim because conclusory allegation that alleged harm is "not outweighed by countervailing

8    benefits to consumers or to competition" was insufficient).

9         The Court also finds that Plaintiff fails to allege that he could not have avoided the alleged

10    injury as required to meet the third prong of the Section 5 Test.  An injury is reasonably avoidable

11    if consumers "have reason to anticipate the impending harm and the means to avoid it."  *Orkin*

12    *Exterm. Co., Inc. v. FTC,* 849 F.2d 1354, 1365-66 (11th Cir.1988).  As discussed in Part III(a)(i)

13    above, the Support Page gave consumers notice that non-HP cartridges may not work with HP

14    printers in the future.  This information is sufficient to allow a reasonable consumer to anticipate

15    any impending harm caused by a printer with limited compatibility with non-HP cartridges.

16    Consumers had the means to avoid any impending injury, either by buying a different printer in

17    the first instance, or by not buying refilled or third-party cartridges that might be rendered

18    incompatible in the future.  *Casey*, 2015 WL 10096084, at *15 (finding that consumers could have

19    reasonably avoided injury caused by misleading representations and omissions where sources

20    providing accurate information were available to consumers).

21         Plaintiff does not allege facts sufficient to meet the second or third prongs of the Section 5

22    Test, and is thus unable to state a claim under FDUTPA based on unfair practices.  Because the

23    Court finds that Plaintiff's allegations are insufficient to show that the HP's conduct was deceptive

24    or unfair, the Court need not consider whether Plaintiff has adequately alleged causation or

25    damages.  Plaintiff's FDUTPA claim (Claim 1) is DISMISSED without prejudice.

26         **b.  FMAL Claim**

27

1      Plaintiff alleges that HP violated the Florida Misleading Advertisement Law (the

2 "FMAL"), which generally prohibits misleading advertising.  FAC ¶¶ 103-11; Fla. Stat. §

3 817.41(1).  Specifically, Plaintiff alleges that HP advertised its printers as "compatib[le] with

4 third-party and refill ink cartridges" and that those advertisements were misleading in light of a

5 future firmware update that rendered the printers incompatible with such cartridges.  FAC ¶ 105.

6      In relevant part, the FMAL makes it "unlawful for any person to make or disseminate or

7 cause to be made or disseminated before the general public of the state, or any portion thereof, any

8 misleading advertisement."  Fla. Stat. § 817.41(1).  "A 'misleading advertisement' is defined as

9 statements made with the purpose of selling property or services 'which are known, or through the

10 exercise of reasonable care or investigation could or might have been ascertained, to be untrue or

11 misleading.'"  *Godelia v. Doe 1*, 881 F.3d 1309, 1321 (11th Cir. 2018) (quoting Fla. Stat. §

12 817.40(5).  Under the FMAL, Plaintiff must "prove reliance on the alleged misleading advertising,

13 as well as each of the other elements of the common law tort of fraud in the inducement."  *Smith v.*

14 *Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992); *see also Makaeff v. Trump Univ.*, LLC, 145 F.

15 Supp. 3d 962, 981-82 (S.D. Cal. 2015).

16      HP argues that Plaintiff has failed to identify any misleading advertisement, noting that the

17 only advertisement mentioned in the FAC is the statement on the printer packaging that directed

18 customers to "[p]lease use genuine HP ink cartridges for best results."  Opp., p. 13; FAC ¶ 34.

19 HP further argues that Plaintiff failed to meet any of the elements of fraudulent inducement, as

20 required to state a claim under the FMAL.

21      As with his FDUTPA claim, Plaintiff argues that his FMAL claim is based on omissions,

22 not affirmative representations.  Opp. p. 21.  The Court finds that the alleged representations and

23 omissions are not "untrue or misleading" under the FMAL for the same reasons that those

24 representations and omissions are not deceptive or unfair under the FDUTPA, as discussed above.

25 *See Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1297 (M.D. Fla. 2017) ("The type of

26 activity proscribed by section 817.41—misleading advertising—is precisely the type of unfair and

United States District Court
Northern District of California

1    deceptive trade practice that is prohibited by FDUTPA.").  Because Plaintiff has failed to allege

2    any misleading advertising, his allegations are insufficient to state a claim under the FMAL and

3    the Court need not consider whether he adequately alleged the elements of fraudulent inducement.

4            Plaintiff's FMAL claim (Claim 2) is DISMISSED without prejudice.

5                    **c.  CFAA Claim**

6            The Computer Fraud and Abuse Act ("CFAA") is a federal criminal statute that also

7    authorizes civil actions for any person who suffers damage or loss by reason of a violation of the

8    statute.  18 U.S.C. § 1030(g).  "The CFAA prohibits a number of different computer crimes, the

9    majority of which involve accessing computers without authorization or in excess of authorization,

10   and then taking specified forbidden actions, ranging from obtaining information to damaging a

11   computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009)

12   (citing 18 U.S.C. 1030(a)(1)-(7) (2004)).

13           Plaintiff alleges that HP violated Sections 1030(a)(5)(A) through (C), Section

14   1030(a)(2)(C), and Section 1030(a)(6)(A).  In relevant part, Section 1030(a) creates liability for

15   whomever:

16           (5)(A) knowingly causes the transmission of a program, information, code, or command,

17           and as a result of such conduct, intentionally causes damage without authorization, to a

18           protected computer;

19           (5)(B) intentionally accesses a protected computer without authorization, and as a result of

20           such conduct, recklessly causes damage;

21           (5)(C) intentionally accesses a protected computer without authorization, and as a result of

22           such conduct, causes damage and loss;

23           (2)(C) intentionally accesses a computer without authorization or exceeds authorized

24           access, and thereby obtains . . . information from any protected computer;

25           (6)(A) knowingly and with intent to defraud traffics (as defined in [18 U.S.C.] section

26           1029) in any password or similar information through which a computer may be accessed

27

United States District Court
Northern District of California

1    without authorization, if . . . such trafficking affects interstate or foreign commerce.

2    18 U.S.C. §§ 1030(a).

3        The phrase "without authorization" has been interpreted to mean "when the person has not

4    received permission to use the computer for any purpose (such as when a hacker accesses

5    someone's computer without any permission) or when the [computer owner] has rescinded

6    permission to access the computer and the defendant uses the computer anyway." *Brekka*, 581

7    F.3d at 1135; *see Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016)

8    (same).

9        Here, Plaintiff does not contest that HP had "authorized access" to Plaintiff's printers.

10   (FAC ¶ 122), nor that HP had authorization to install firmware updates. *Id.* at ¶ 66 ("HP can

11   communicate with HP printers after it sells them. One way to communicate with printers is by

12   updating their software.").  Plaintiff instead alleges that HP exceeded its authorized access when it

13   conducted a remote firmware update for the purpose of limiting Class Printers' compatibility with

14   certain non-HP cartridges. *Id.* at ¶¶ 122-23.

15       The statutory definition of "exceeds authorized access" is "to access a computer with

16   authorization and to use such access to obtain or alter information in the computer that the

17   accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).  Allegations that HP

18   exceeded authorized access are insufficient to state a claim under subsections (B) and (C), which

19   only apply to conduct "without authorization."  In *San Miguel*, this Court held that similar

20   allegations were insufficient to state a claim under subsections (B) and (C).  *San Miguel*, 317 F.

21   Supp. 3d at 1085.  This Court reasoned that expanding subsections (B) and (C) to include conduct

22   that allegedly exceeded authorized access would not only be "contrary to the plain language of

23   subsections (B) and (C), but also inconsistent with other provisions of the CFAA that expressly

24   provide for liability when a defendant 'accesses a computer without authorization *or* exceeds

25   authorized access.'"  *Id.* (quoting 18 U.S.C. § 1030(a)(2)).  This remains true in the present case.

26       Section 1030(a)(5)(A), however, does not require accessing a computer "without

27

28

1    authorization."  Instead, subsection (A) provides liability for "knowingly caus[ing] the

2    transmission of a program, information, code or command, and as a result of such conduct,

3    intentionally caus[ing] damage without authorization, to a protected computer."  18 U.S.C. §

4    1030(a)(5)(A).  HP argues that Plaintiff failed to identify any damage to his printer as a result of

5    HP's conduct.  Motion, p. 17.  Plaintiff alleges that HP knowingly transmitted the firmware update

6    and intentionally caused damage by altering his printers' functionality in a way that devalued the

7    printers.  FAC ¶¶ 32, 57, 100.  At the pleading stage, these allegations are sufficient.  *See San*

8    *Miguel*, 317 F. Supp. 3d at 1085-86; *In re Apple & AT & TM Antitrust Litigation*, 596 F.Supp.2d

9    1288 (N.D. Cal. 2008) (denying motion to dismiss Section 1030(a)(5)(A) claim where plaintiffs

10   alleged that they authorized software update but did not authorize the resulting damages to their

11   iPhones).

12       As to Plaintiff's claim under Section 1030(a)(2)(C), HP argues that the claim fails because

13   HP did not exceed its authorized access, and even if it did, Plaintiff has not alleged any

14   "information" that HP "obtain[ed]" from doing so.  The Court agrees.  The only allegation in the

15   FAC that speaks to HP obtaining information states: "[b]y exceeding its authorized access, HP

16   obtained and altered Class Printers' information and data."  FAC ¶ 123.  The FAC does not state

17   what information HP allegedly obtained.  This "formulaic recitation of a cause of action's

18   elements" is not sufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

19       Plaintiff's claim under Section 1030(a)(6)(A) fails for similar reasons.  HP argues that

20   Plaintiff failed to allege that HP trafficked "in any password or similar information through which

21   a computer may be accessed without authorization."  18 U.S.C. § 1030(a)(6)(A).  "Traffic" in this

22   statute means "transfer, or otherwise dispose of, to another, or obtain control of with intent to

23   transfer or dispose of."  18 U.S.C. § 1029(e)(5).  Plaintiff alleges that "[t]hrough its firmware

24   update, HP knowingly and with intent to defraud transferred or disposed of information from the

25   Class Printers, including printer-to-cartridge communications that function like passwords."  FAC

26   ¶ 127.  Plaintiff does not allege how "printer-to-cartridge communications" function like

27

28   Case No.: 5:19-cv-05363-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS AND/OR STRIKE

1    passwords.  Plaintiff also fails to allege that any information was transferred or disposed of as a

2    result of the firmware update, or that HP intended to transfer or dispose of any information.

3    Plaintiff's allegations are insufficient to state a claim under Section 1030(a)(6)(A).  *Iqbal*, 556

4    U.S. at 678 ("a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further

5    factual enhancement.'") (citing *Twombly*, 550 U.S. at 557).

6        To the extent it is premised on Sections 1030(a)(5)(B), 1030(a)(5)(C), 1030(a)(2)(C), and

7    1030(a)(6)(A), Plaintiff's CFAA claim is DISMISSED without prejudice.

8                            **d.  Trespass to Chattels**

9        "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of

10   another."  *Miller v. Nat'l Broad. Co.*, 187 Cal.App.3d 1463, 1480 (1986) (citations omitted).  The

11   California Supreme Court has held that the principles underlying the tort apply to allegations of

12   digital trespass.  *See Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003).  "[T]o prevail on a claim for

13   trespass based on accessing a computer system, the plaintiff must establish: (1) defendant

14   intentionally and without authorization interfered with plaintiff's possessory interest in the

15   computer system; and (2) defendant's unauthorized use proximately resulted in damage to

16   plaintiff."  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000).

17       Plaintiff's trespass allegations mirror those relating to its CFAA claim.  Plaintiff alleges

18   that HP exceeded its authorized access to Plaintiff's printers when it activated a firmware update

19   that disabled his printers.  FAC ¶ 122-23.  Plaintiff further alleges that HP's conduct caused

20   damage "by preventing the Class Printers from operating, by impairing the condition of these

21   printers, by reducing the value of these printers, and by depriving Plaintiff and Class members of

22   the use of these printers and of their non-HP ink cartridges for a substantial period of time."  *Id.* at

23   ¶ 134.  HP argues that because it had authorized access (*Id.* at ¶ 122), Plaintiff cannot claim that

24   HP acted "without authorization" for the purposes of a trespass claim.  Motion, p. 21.

25       In *San Miguel*, this Court held that similar allegations were sufficient to state a claim for

26   digital trespass despite the fact that the defendant had allegedly only exceeded authorized

27

28   Case No.: 5:19-cv-05363-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS AND/OR STRIKE

United States District Court
Northern District of California

access. *San Miguel*, 317 F. Supp. 3d at 1088.  The Court similarly finds the allegations here

sufficient to state a claim.  *See In re Apple & AT & TM Antitrust Litigation*, 596 F.Supp.2d at 1307

(plaintiff's consent to install software update did not foreclose a trespass claim based on damage

caused by that update); *see also eBay*, 100 F.Supp.2d at 1070 (trespass claim cognizable because

even if defendant's web crawlers were authorized to use eBay's system, the web crawlers

exceeded the scope of any such consent when they began acting like robots by making repeated

queries).

### e.  Injunctive Relief

HP contends that Plaintiff does not have standing to bring a claim for injunctive relief.

Generally, to establish Constitutional standing under Article III, a plaintiff must show (1) a

concrete and particularized injury in fact, (2) a causal connection between the injury and the

conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable

decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff must demonstrate

constitutional standing separately for each form of relief requested.  *Friends of the Earth, Inc. v.

Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000).  "For injunctive relief, which is a

prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or

hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir.), *cert. denied*, 139

S. Ct. 640 (2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  In other

words, the "threatened injury must be certainly impending to constitute injury in fact" and

"allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013) (internal quotation marks and alteration omitted).  Past wrongs, though

insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and

immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)

(internal quotation marks omitted).  Where standing is premised entirely on the threat of repeated

injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar

way." *Id.* at 111.

United States District Court
Northern District of California

1    In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit held that "a previously deceived

2    consumer may have standing to seek an injunction against false advertising or labeling, even

3    though the consumer now knows or suspects that the advertising was false at the time of the

4    original purchase, because the consumer may suffer an actual and imminent, not conjectural or

5    hypothetical threat of future harm. 889 F.3d at 969.  The Ninth Circuit made clear that such a

6    consumer must still "adequately alleged that she faces an imminent or actual threat of future

7    harm" and that such injury is concrete and particularized.  *Id.* at 971.  In that case, the Ninth

8    Circuit held that the plaintiff had standing for injunctive relief because she alleged that she desired

9    to repurchase the product at issue in the future.  *Id.* at 970 (distinguishing cases from the Seventh,

10   Second, and Third Circuits because the plaintiffs in those cases did not "sufficiently allege their

11   intention to repurchase the product at issue as [plaintiff] [did] here.").

12   HP argues that Plaintiff does not have standing to seek injunction relief because he failed

13   to allege that he has any desire to repurchase an HP printer.  Motion, p. 24-25.  While Plaintiff

14   does not allege that he desires to repurchase an HP printer, the Court does not find his failure to do

15   so dispositive in this case.  Plaintiff alleges that he still owns the printers at issue and that HP

16   continues to use remote firmware updates to modify its printers in a way that has allegedly harmed

17   Plaintiff in the past.  FAC ¶¶ 71-72, 102.  Moreover, Plaintiff raises claims not based on false

18   advertising—for example, his trespass and CFAA claims—where the conduct complained of is

19   capable of repetition without Plaintiff purchasing another printer. These allegations and claims

20   distinguish Plaintiff's case from cases like *Davidson*, where the misconduct alleged could only

21   threaten future harm if the plaintiff repurchased the product.

22   In this case, the threat of a future firmware update that could further modify Plaintiff's

23   printers is sufficiently "concrete and particularized" to establish standing, even in the absence of

24   any allegations as to Plaintiff's desire to purchase another printer.  *Spokeo, Inc. v. Robins*, 136 S.

25   Ct. 1540, 1548 (2016), *as revised* (May 24, 2016).  The injury is particularized because it would

26   affect Plaintiff, as an owner of HP printers, in a "personal and individual" way.  *Ibid.*  Plaintiff's

27

Case No.: 5:19-cv-05363-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS AND/OR STRIKE

United States District Court
Northern District of California

1    alleged injury is also sufficiently concrete, considering that Plaintiff alleges a history of lawsuits

2    based on similar misconduct by HP.  *See id.* at 1549 (stating that in considering whether a harm is

3    concrete, it is instructive to consider whether the harm has a close relationship to a harm that has

4    traditionally been regarded as providing a basis for a lawsuit in American courts).

5            The Court finds that Plaintiff has shown a sufficient likelihood that he will be wronged

6    again in a similar way to establish standing for injunctive relief.  HP's motion to strike Plaintiff's

7    request for injunctive relief is DENIED.

8    **IV.    Conclusion**

9            For the reasons set forth above, HP's motion to dismiss is GRANTED IN PART.

10   Plaintiff's FDUTPA claim (Claim 1), FMAL claim (Claim 2), and CFAA claim (Claim 3) to the

11   extent it is premised on 18 U.S.C. §§ 1030(a)(5)(B), 1030(a)(5)(C), 1030(a)(2)(C), and

12   1030(a)(6)(A) are DISMISSED WITH LEAVE TO AMEND.  HP's motion to dismiss is DENIED

13   in all other respects.  HP's motion to strike Plaintiff's request for injunctive relief is DENIED.

14   Plaintiff may file and serve an amended complaint consistent with this Order no later than May 22,

15   2020.

16           **IT IS SO ORDERED.**

17   Dated:  April 24, 2020

18                                                            _____

19                                                            EDWARD J. DAVILA
                                                             United States District Judge

20

21

22

23

24

25

26

27

28

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS AND/OR STRIKE

22

*(left margin)* United States District Court
Northern District of California