UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN PARZIALE,<br><br>    Plaintiff,<br><br>v.<br><br>HP, INC,<br><br>    Defendant. | Case No. 5:19-cv-05363-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 43 |

This putative nation-wide class action suit arises out of Defendant HP Inc.'s ("HP" or "Defendant") implementation of a remote firmware update that allegedly incapacitated Plaintiff John Parziale's ("Plaintiff") HP printers and thirty-three other models of HP printers by preventing the use of certain non-HP ink cartridges in those printers.

On April 24, 2020, this Court granted in part Defendant's motion to dismiss the First Amended Complaint ("FAC"), with leave for Plaintiff to amend. Dkt. No. 32. Shortly thereafter, Plaintiff filed a Second Amended Complaint. Dkt. No. 38 ("SAC"). Defendant now moves to dismiss certain claims in the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 43 ("Motion"). The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, Defendant's motion is **GRANTED in full**.

**I.  Background**

The facts giving rise to this dispute are summarized in the Court's Order granting in part Defendant's motion to dismiss. Dkt. No. 32. The Court recounts only the pertinent facts here.

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1

Plaintiff alleges that on or around April 12, 2019, HP used dynamic security technology to implement a remote firmware update that modified the firmware on many models of HP printers, including Plaintiff's printers, without alerting users.[1] The update caused affected printers to cease functioning with certain non-HP ink cartridges. SAC ¶ 3.

Plaintiff owned two HP printers at the time of the update. Plaintiff bought his printers based at least in part on their "ability to use third party ink cartridges" because such cartridges were less expensive than their HP brand counterparts. *Id.* ¶ 28. According to Plaintiff, at the time he purchased his HP printers, "almost every printer allowed the use of third party ink cartridges and refilled name brand cartridges." *Id.* ¶ 49. Plaintiff alleges that he believed he would be able to use third-party ink cartridges based on information on the printer box and the online "store page." *Id.* ¶¶ 28, 38. The printer box included a statement telling consumers to "[p]lease use genuine HP ink cartridges for best results." *Id.* ¶ 27. The store page contained the following statement:

> "Dynamic security enabled printer. Only intended to be used with cartridges using an HP original chip. Cartridges using a non-HP chip may not work, and those that work today may not work in the future. http://www.hp.com/go/learnaboutsupplies."

Samplin Decl. Ex. A, at 5.[2]

As a result of the firmware update, Plaintiff was unable to use his printers unless and until

---

[1] Plaintiff alleges that the firmware update affected his HP Officejet Pro 7740 model printers as well as an extensive list of other printer models (the "Class Printers"). *See* SAC ¶ 70 for a complete list of Class Printers.

[2] As explained further below, the Court may consider the store page as it was at the time of Plaintiff's purchase, a snapshot of which is attached to Defendant's motion to dismiss, because Plaintiff incorporates the store page into the SAC (*see, e.g.*, SAC ¶¶ 38, 61) and because the Court may take judicial notice of documents from the Wayback Machine.

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

2

he inserted an ink cartridge with an original HP chip. SAC ¶¶ 6, 31, 55. Plaintiff alleges that by limiting the functionality of his printers, the update reduced the value of his printers and rendered the non-HP cartridges he already owned useless. *Id.* ¶¶ 55, 60.

Plaintiff brought this action seeking to certify a nationwide class of all United States Citizens who, between the applicable statute of limitations and the present, purchased or owned one or more of any of the printer models identified in the SAC, and a subclass of all persons in Florida who purchased or owned one or more of any such printer. *Id.* ¶ 102. Plaintiff initially brought claims on behalf of the Florida subclass for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Claim 1) and the Florida Misleading Advertisement Law ("FMAL") (Claim 2). On behalf of the larger class, Plaintiff asserted claims for violations of the Computer Fraud and Abuse Act ("CFAA") (Claim 3), trespass to chattels (Claim 4), and tortious interference with contractual relations and/or prospective economic advantage (Claim 5). Defendant moved to dismiss all claims and in response, Plaintiff amended the complaint. *See* First Amended Complaint ("FAC"), Dkt. No. 19. Defendant then moved to dismiss the FAC. Dkt. No. 25. The Court granted the motion in part and denied it in part, dismissing the FDUTPA and FMAL claims, most of the CFAA claims, and the tortious interference claim, for failure to state a claim. Dkt. No. 32. The Court granted Plaintiff leave to amend the complaint. *Id.*

Plaintiff filed the SAC shortly thereafter, reasserting the FDUTPA claim and maintaining the surviving CFAA and trespass to chattels claims. Defendant once again moves to dismiss all claims, arguing that the SAC still fails to state a claim under FDUTPA and that the new allegations undermine the CFAA and trespass to chattels claims that survived the previous motion.

**II.   Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may seek dismissal of a suit for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

3

*Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether to grant a motion to dismiss, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### III. Discussion

#### a. Judicial Notice

Defendant's motion to dismiss attaches as exhibits (1) a historical snapshot of the HP store page for the OfficeJet Pro 7740 archived on the Wayback Machine,[3] (2) photos of the OfficeJet Pro 7740 box and packaging, and (3) a copy of the HP support page. Decl. of Ilissa Samplin ("Samplin Decl."), Dkt. No. 43-1, Exhibits A-C.

While the Court generally does not consider materials outside of the complaint on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007). "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Aledlah v. S-L Distribution Co., LLC*, No. 20-CV-00234-JSC, 2020 WL 2927980, at *3 (N.D. Cal. June 3, 2020) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)) (internal

---

[3] The Internet Archive Wayback Machine "is a service that allows people to visit archived versions of Web sites." *See* Internet Archive, Wayback Machine General Information, available at https://help.archive.org/hc/en-us/articles/360004716091-Wayback-Machine-General-Information.

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

4

quotation marks and citation omitted).

Plaintiff refers to and quotes from the printer box in the SAC. He alleges that the statement on the box—"Please use genuine HP ink cartridges for best results"—was key in leading him to believe that he could use non-HP cartridges with his printers. SAC ¶¶ 27, 49. However, he further alleges that this was the "only statement on the packaging" (*id*. ¶ 27) and that there were no disclosures on the box indicating that HP would or could block customers from using non-HP ink cartridges. *Id.* ¶ 35. In its motion papers, Defendant attached photos of the text and images that were allegedly printed on the box at the time of Plaintiff's purchase, including photos of a "Cartridge Warning Label" advising that cartridges with non-HP chips may not work with the printer. Samplin Decl. ¶ 2, Ex. B. Thus, the document attached by Defendant contradicts the facts as pled in the SAC. Although the SAC refers to and relied on the printer box, the Court finds that the information provided on the box is a disputed issue of fact that is not properly decided at the motion to dismiss stage. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.") *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). The Court, therefore, declines to consider Exhibit B to the Samplin Declaration.

Defendant also attaches a historical snapshot of the online store page for the printer, as archived on the Wayback Machine. Plaintiff refers to the store page throughout the SAC and alleges that he "relied on" the information contained on the store page in deciding to make his purchase. SAC ¶ 38. Unlike the information on the printer box, the authenticity of the webpage is not reasonably subject to dispute. A court "may take judicial notice on its own," Fed. R. Evid. 201(c)(1), and "district courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule." *See Metricolor LLC v. L'oreal S.A.*, No. 218-CV-00364-CASEX, 2020 WL 3802942, at *7 (C.D. Cal. July 7, 2020); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019); *Erickson v. Nebraska*

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

5

*Machinery Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The Court finds the store page to be relevant and inherently reliable, and therefore takes judicial notice of Exhibit A to the Samplin Declaration.

The Court previously found that the HP support page was incorporated into the FAC, however, the references to it have mostly been excised from the SAC. Furthermore, Plaintiff now expressly alleges that he did not see or rely on information on the support page when making his purchase. SAC ¶ 37. Thus, the Court no longer finds that the support page is relevant to its analysis and declines to take judicial notice of Exhibit C to the Samplin Declaration.

### b. FDUPTA

Plaintiff alleges that HP violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201 et seq. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006), *review denied,* 962 So.2d 335 (Fla. 2007). "Whether an alleged act or practice is deceptive or unfair may be decided as a matter of law." *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015), report and recommendation adopted, No. 3:14-cv-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015); *see, e.g., P.C. Cellular, Inc. v. Sprint Solutions, Inc.,* No. 5:14-cv-237-RS-GRJ, 2015 WL 128070, at *5 (N.D. Fla. Jan. 8, 2015); *Zambrano v. Indian Creek Holding, LLC,* No. 09-cv-20453, 2009 WL 2365842, at *1 (S.D. Fla. July 30, 2009).

The Court previously held that Plaintiff failed to allege that Defendant engaged in any deceptive or unfair practice for the purposes of establishing an FDUTPA violation. In the SAC,

Plaintiff does not re-assert any allegations of a deceptive practice, but rather, alleges only that Defendant's conduct constitutes an unfair business practice. *See* Opp. p 1; Fla. Stat. § 501.204. An act or practice is "unfair" under FDUTPA if it causes consumer injury that is (1) substantial, (2) not outweighed by any countervailing benefits to consumers or competition, and (3) one that consumers themselves could not have reasonably avoided (the "Section 5 Test"). *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014) (adopting the FTC Policy Statement on Unfairness for the purposes of establishing unfairness under FDUTPA). "[V]iolations of FDUTPA include violations of '[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts.'" *Id.* at 1096-97 (quoting Fla. Stat. § 501.203(3)(b)); *see Fed. Trade Comm'n v. Vylah Tec, LLC*, No. 17-cv-228-PAM-MRM, 2019 WL 722085, at *6 (M.D. Fla. Jan. 9, 2019) (stating the requirements for a FDUTPA claim "mirror[] the requirements of Section 5 of the FTC Act"); *Casey*, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015) (same).

The Court previously held, and Defendant does not contest, that Plaintiff adequately pleads a substantial injury under the first prong of the Section 5 Test. Instead, Defendant argues that Plaintiff fails to allege that his injury outweighed any countervailing benefits to consumers or that a reasonable consumer could not have avoided the purported injury. Mot. p. 5-6.

### i. Countervailing Benefits

This Court previously found that in the FAC, "Plaintiff fail[ed] to allege that his injury outweighs any countervailing benefit to consumers." Order, p. 13. Whereas the FAC raised "*no* allegations to refute [the] alleged benefits" that HP put forth (*ibid.*), the SAC expressly alleges that the firmware update "does not create any benefit for consumers, because the consumers already had quality printing at a lower price from the use of third party and refilled cartridges." SAC ¶ 59. The SAC further alleges that the "update on Class Printers does nothing to improve consumers experiences" and that "[t]he effect of this dynamic security is to, at best, cause the consumers to experience the same quality of printing as consumers had previously while removing the ability to

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

7

use third party and refilled ink cartridges and thus cost consumer significantly more money." *Id.* ¶¶ 58-59. Thus, the Court finds that Plaintiff adequately alleges that "the harm caused by forcing consumers to purchase more expensive ink cartridges," and by rendering their already purchased non-HP ink cartridges worthless, plausibly outweighs the benefits to consumers. *Id.* ¶ 60.

Defendant argues that these "[t]hreadbare recitals" and "conclusory statements" cannot withstand Rule 12. Mot. p. 6. But Plaintiff has offered more than mere legal conclusions in the SAC. SAC ¶¶ 58-59. At the pleading stage, these allegations are sufficient. *Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff is not required to plead "detailed factual allegations" to state a claim under Rule 8). Although the benefits of the firmware update may ultimately outweigh the alleged harm to Plaintiff, the "cost-benefit analysis this test calls for is not properly suited for resolution at the pleading stage." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015); *see also In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ("While the benefits of Apple's conduct may ultimately outweigh the harm to consumers, this is a factual determination that cannot be made at this stage of proceedings"); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) ("the Court cannot find as a matter of law that the supposed benefits outweigh Plaintiffs' injuries.").

Accordingly, the SAC adequately pleads the second prong of the Section 5 Test.

### ii. Reasonably Avoidable

An injury is reasonably avoidable under the final prong of the Section 5 Test if consumers "have reason to anticipate the impending harm and the means to avoid it." *Orkin Exterm. Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988). This Court previously held that the information provided to consumers on HP's support page was "sufficient to allow a reasonable consumer to anticipate any impending harm caused by a printer with limited compatibility with non-HP cartridges." Order, p. 13. As such, the Court held that Plaintiff "fail[ed] to allege that he could not have avoided the alleged injury."

The warning on the support page stated:

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

8

> "Dynamic security enabled printer.  This Firmware includes
> dynamic security measures, which may prevent supplies with non-
> HP chips or circuitry from working now or in the future."

Order, p. 2; FAC ¶ 37.  In the SAC, Plaintiff removed the reference to this warning and clarified that "he relied only on the packaging and store page and did not view the support page for the printer at issue."  Opp. at 9; SAC ¶¶ 37-38.  Defendant argues that the store page, on which Plaintiff expressly relied, contains a warning nearly identical to the warning on the support page. Motion, pp. 9-10.  Indeed, the store page includes a warning that states:

> "Dynamic security enabled printer.  Only intended to be used with
> cartridges using an HP original chip. Cartridges using a non-HP chip
> may not work, and those that work today may not work in the
> future."

Samplin Decl., Ex. A at 5.  The Court finds that like the warning on the support page, the warning on the store page is sufficient to allow a reasonable consumer to anticipate any impending harm caused by a printer becoming incompatible with non-HP cartridges.  Moreover, consumers had the means to avoid any impending injury, either by buying a different printer in the first instance, or by not buying non-HP cartridges that might be rendered incompatible in the future.  *Casey*, 2015 WL 10096084, at *15 (finding that consumers could have reasonably avoided injury caused by misleading representations and omissions where sources providing accurate information were available to consumers).

Plaintiff argues that even if the store page could be understood by a reasonable consumer to indicate that non-HP cartridges might not work in the future, those statements do not apply to "refilled HP chip cartridges."  Opp. p. 10.  The Court rejects this distinction.  The store page statement distinguishes between cartridges that contain an "HP original chip" and those with "non-HP chips."  Nowhere in the SAC does Plaintiff allege that the refilled cartridges he was using at the time of the security update or any of the cartridges that were rendered incompatible contained an "HP original chip."  Indeed, Plaintiff specifically alleged that the "firmware update changed the communication protocol between HP printers and microchips located in both HP-branded ink

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

9

cartridges and third-party cartridges so that certain varieties of *third-party* inkjet cartridge microchips, were no longer able to communicate with the HP printer firmware." SAC ¶ 86 (emphasis added). Plaintiff further alleges that the update blocked "remanufactured ink cartridge chips" and that "any cartridge with *such a chip* no longer functioned with an HP printer." *Ibid.* Having alleged that the firmware update affected only third-party and remanufactured chips, Plaintiff cannot now argue that the update affected refilled cartridges containing an HP original chip. Moreover, throughout the SAC, Plaintiff distinguishes between "Original HP-manufactured ink cartridges" and "refilled HP ink cartridges," indicating that refilled cartridges do not, in fact, contain HP original chips. *See e.g.*, SAC ¶¶ 48-49, 55. Plaintiff cannot now, in his Opposition, raise an allegation that refilled cartridges contain HP original chips.

The Court finds that based on the warning on the store page, a reasonable consumer could have anticipated that any cartridges with non-HP chips, including refilled cartridges, might become incompatible with the printer in the future. Thus, even taking Plaintiff's allegations as true, it is clear from the face of the SAC and the documents incorporated therein that consumers could have reasonably avoided any injury caused by the firmware update.

Defendant's motion to dismiss the FDUTPA claim is **GRANTED.**

### c. CFAA

The Computer Fraud and Abuse Act ("CFAA") is a federal criminal statute that also authorizes civil actions for any person who suffers damage or loss by reason of a violation of the statute. 18 U.S.C. § 1030(g). "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (citing 18 U.S.C. 1030(a)(1)-(7) (2004)).

Plaintiff alleges that HP violated Section 1030(a)(5)(A), which prohibits "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

10

conduct, intentionally caus[ing] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). The Court previously held that Plaintiff's allegations were sufficient to state a claim under this section of the CFAA because Plaintiff alleged that Defendant knowingly transmitted the firmware update and intentionally caused damage by altering his printers' functionality in a way that devalued the printers. Order, p. 17.

Defendant now argues that the new allegations Plaintiff added to the SAC—specifically, Plaintiff's express reliance on the statements contained on the store page—make clear that any damage caused by the firmware update was not "without authorization." The Court agrees. As discussed above, the warning on the store page put Plaintiff on notice that the printer's dynamic security might render certain non-HP cartridges incompatible with the printer in the future. The alleged damage to Plaintiff's printer—*i.e.* that it did not function for some time and that it ultimately lost value—resulted from the printer becoming incompatible with non-HP cartridges, a possibility that Plaintiff was warned about.

Plaintiff argues that even if the warning created authorization for Defendant to implement the firmware update, that authorization "did not include the ability for Defendant to actively freeze and disable the printer." Opp. p. 11. Courts have accepted similar theories in other cases. For example, in *In re Apple Inc. Device Performance Litigation*, the plaintiffs voluntarily downloaded a software update that, unbeknownst to them, caused a severe throttling effect on their iPhones. 347 F. Supp. 3d 434 (N.D. Cal. 2018). The court found that "even though Plaintiffs voluntarily installed the iOS updates, they never gave permission for Apple to cause damage to their iPhones." *Id.* at 452. The court reasoned that Apple had acted "without authorization" because "[n]either the software update notification nor the software update release notes made any mention of [the] severe throttling effect," but rather, Apple intentionally concealed this potential effect. *Ibid*; *see also San Miguel v. HP, Inc.,* 317 F. Supp. 3d 1075, 1085 (N.D. Cal. 2018) (allowing plaintiffs' Section 1030(a)(5)(A) claim to survive because plaintiffs alleged that "HP did not notify [p]laintiffs" about the update and that HP "concealed" the nature of the update).

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
11

1    Unlike in *San Miguel* and *In re Apple Inc. Device Performance Litigation*, Plaintiff in this
2    case was expressly notified that "[c]artridges using a non-HP chip may not work, and those that
3    work today may not work in the future." All of the alleged damage to Plaintiff's printers resulted
4    from the fact that they were no longer compatible with non-HP cartridges. SAC ¶¶ 6, 31, 55
5    (alleging that Plaintiffs printers were frozen and disabled in the sense that they would not function
6    "unless and until" a compatible cartridge was installed). Because Plaintiff was on notice of the
7    potential firmware update and its effects, the Court finds that Plaintiff fails to adequately allege
8    that the update caused "damage without authorization" as required under Section 1030(a)(5)(A).
9    Defendant's motion to dismiss the CFAA claim is **GRANTED**.

### d. Trespass to Chattels

"The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." *Miller v. Nat'l Broad. Co.*, 187 Cal.App.3d 1463, 1480 (1986) (citations omitted). The California Supreme Court has held that the principles underlying the tort apply to allegations of digital trespass. *See Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003). "[T]o prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000).

Like Plaintiff's CFAA claim, Plaintiff's trespass claim turns on whether Defendant acted "without authorization." For the reasons stated above, the Court finds that Defendant did not act without authorization because Plaintiff was on notice of Defendant's ability to interfere with his printer. *See In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *18 (N.D. Cal. Oct. 27, 2016) (noting that the question of consent depended on "whether the terms of [an] opt-out pop-up provided adequate notice").

In the Court's previous order allowing the trespass claim to proceed, the Court relied on *San Miguel* for the proposition that one could state a claim for digital trespass "despite the fact that

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

the defendant had allegedly only exceeded authorized access." Order, p. 19, citing *San Miguel*, 317 F. Supp. 3d at 1088. In light of the new allegations in the SAC and for the reasons discussed above, the Court no longer finds it plausible that Defendant exceeded its authorized access. Thus, Defendant's motion to dismiss the trespass claim is **GRANTED**.

### e. Leave to Amend

Where a plaintiff fails to survive Rule 12(b)(6) scrutiny and "it is clear that the complaint could not be saved by amendment," "[d]ismissal without leave to amend is proper." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (2008).

Plaintiff has already had two opportunities to amend his complaint, yet each of Plaintiff's claims remains undercut by the warning on the store page. Having expressly alleged that he relied on the store page, Plaintiff cannot escape the fact that he was warned about the precise injury he now claims. Any amended allegation suggesting that Plaintiff did not see the warning would impermissibly contradict Plaintiff's prior pleadings. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (an "amended complaint may only allege other facts consistent with the challenged pleading"); *In re City of Los Angeles Med. Marijuana Litig.*, 2014 WL 12783295, at *3 (C.D. Cal. June 13, 2014) (court need not accept as true alleged facts that "either directly contradict or obfuscate facts alleged in the prior pleading"). Thus, the Court finds that further amendment would be futile and Plaintiff's claims are **DISMISSED** without leave to amend.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** in full and Plaintiff's claims are **DISMISSED** with prejudice. All pretrial deadlines and hearing dates are **VACATED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 29, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-05363-EJD
ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
13